McGinnis vs. Chamberlain, Miller & Co.

---

## McGINNIS vs. CHAMBERLAIN, MILLER & CO.

1. N. McD. applied to S. McG., to become his security on a note to C. M. & Co., not naming any amount; McG. replied by letter, authorizing McD. to sign his name to such note as security. Suit afterwards being brought on this note, McG. plead *non est factum*. On the trial of that issue, it was proper for the Court to let the note be read to the jury on proof of a conversation between McD. and McG., in which McG. distinctly admitted writing the letter giving the authority to McD. to sign his name, etc., and, on the further admission by McG., that McD. was, by the permission and consent of McG., in the constant habit of signing McG.'s name as security for him whenever he chose to do so.
2. The jury having returned a verdict against McG. on this proof, such verdict was not so decidedly against the weight of evidence as to require the Court to grant a new trial.

Complaint, in Gordon Superior Court. Tried before Judge CROOK, at October Term, 1859.

This was an action by Chamberlain, Miller & Co., of Charleston, South Corolina, against Newton McDill, principal, and Stephen McGinnis, security, on a promissory note

McGinnis *vs.* Chamberlain, Miller & Co.

for $1,168 00, payable eight months after date, and dated Charleston, South Carolina, June 11th, 1856.

McGinnis defended the action, and pleaded the general issue, that he never signed said note, which plea he verified by his oath.

Plaintiffs read in evidence, the deposition of Charles H. Smith, who testified that he had the note sued on in his possession, and first had a conversation with McGinnis about the winter of 1857–'58. Told him the note would soon be due; he asked, "What note?" Witness told him the note he had signed with McDill to plaintiffs, for $1,168 00. McGinnis said he never signed any such note. The next day, witness went with McGinnis to McDill's house, and witness asked McDill how came McGinnis' name to that note. McDill said he signed it for McGinnis. McGinnis said, "Newton, how came you to do so?" McDill replied, "Why, Stephen, you wrote me to do it." McGinnis replied, "No, I never." McDill said, "Why, Stephen, I've got your letter now, and you know you wrote me to sign your name to that note." McGinnis said, "I know, Newton, you wrote me that you could get further time on the Charleston debt, if I would sign with you, but you never named such an amount as that. I thought it was some debt of two or three hundred dollars, and I wrote you to sign my name." McDill said, "Well, Stephen, I did not write you any amount at all, and you know I've been signing your name, for several years, as my security whenever I needed security, and you know you authorized me to do it, and you never objected before." McGinnis said, "Well, Newton, that's so, but things are *squally* now, and I am going to swear off every one I can. I don't intend to pay this note—I am going to take care of myself."

Plaintiffs then offered in evidence, the note sued on, to the introduction of which defendant objected. The Court overruled the objection, and admitted the note, to which ruling defendant excepted.

The case was submitted upon the foregoing testimony, and the charge of the Court, and the jury found for the plaintiffs the amount of the note; whereupon, counsel for McGinnis moved for a new trial, upon the grounds, that the verdict was contrary to law and the evidence and the charge of the Court, and because the Court erred in admitting the note in evidence under the facts and proof.

The presiding Judge refused the motion for a new trial, and counsel for McGinnis excepted.

DABNEY, for plaintiff in error.

COOPER, *contra.*

*By the Court.*—LYON, J., delivering the opinion.

1. Whether Newton McDill was authorized to sign the name of plaintiff in error to the note sued on, as security for the said McDill, so as to charge the plaintiff in error with payment, was a question for the consideration of the jury solely. That was the issue that they were to try. The evidence of Charles H. Smith, read to them on the part of defendant, in support of that proposition, was sufficient to let the note go to the jury to be considered by them in connection with that evidence. The Court below, therefore, properly overruled the objection to its admissibility.

2. Was the verdict strongly and decidedly against the weight of evidence? We think not. In the conversation that occurred between McDill and plaintiff in error, in the presence of the witness—the note in controversy being before the parties—McDill said to plaintiff in error : "Why, Stephen, I've got your letter now, and you know you wrote me to sign your name to *that note*"—the one in suit—to which McGinnis replied, "I know, Newton, you wrote me that you could get further time on the Charleston debt if I would sign with you, but you never named such an amount as that. I thought it was some debt of two or three hundred dollars, and *I wrote you to sign my name.*" Here was a plain, open, and unqualified admission that McDill, the principal, had made application to him to sign his name to this identical debt, for the purpose of getting further time on it, and that he had authorized McDill to sign his name thereto. How much stronger evidence could have been given of McDill's authority to make the signature? It is true, that McGinnis said, in giving that authority, that he thought the debt was a much smaller one, but he did not pretend that he made any such limitation, or qualification, in his written authority to sign his name to that note. And if he honestly

thought at the time, that the debt was a much smaller one such thought cannot save him from the effect of an open and unqualified authority to McDill to make the signature for him. But the testimony does not end here. McDill replies to McGinnis: "Well, Stephen, I did not write you any amount at all, and you know I've been signing your name for several years as my security, whenever I needed security, and you know you authorized me to do it, and you never objected before." McGinnis said, in reply to this whole statement, from beginning to end, "*Well, Newton, that's so,*" etc.

One of the tests for determining whether a signature to a paper of this kind is authorized or not, is this: Would the party actually signing the name of the third person, in an indictment, be guilty of forgery? Try this case by that test, and would it be possible to legally convict McDill of forgery in signing the name of McGinnis to that note, as his security on the same? No one would, for a moment, hesitate in saying that he could not be—and why? Because McGinnis authorized him to do so. Yet it is either McGinnis' act, and must be so treated, or McDill is guilty of forgery. In any point of view that we look at this case, the verdict of the jury is not strongly and decidedly against the weight of evidence, but it is well supported by the evidence, any other verdict would have been against the evidence.